Citation Nr: 1532758 
Decision Date: 07/31/15 Archive Date: 08/05/15

DOCKET NO. 06-02 777 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in New York, New York


THE ISSUES

1. Whether the reduction of the evaluation of service-connected lumbar spondylosis from 40 percent to 10 percent disabling, effective June 1, 2011, was proper.

2. Entitlement to service connection for bilateral hearing loss.

3. Entitlement to service connection for bilateral knee disorders.


REPRESENTATION

Veteran represented by: Robert V. Chisholm, Attorney at Law


WITNESS AT HEARING ON APPEAL

The Veteran


ATTORNEY FOR THE BOARD

Hallie E. Brokowsky, Counsel


INTRODUCTION

The Veteran served on active duty in the U.S. Army from June 1975 to June 1979. Additionally, the Veteran served in the U.S. Navy from October 1980 to September 1984. He received an other than honorable discharge for his period of service in the U.S. Navy from October 31, 1982 to September 7, 1984. 

These matters come before the Board of Veterans' Appeals (Board) on appeal from February 2008 and March 2011 rating decisions by the Department of Veterans Affairs (VA) Regional Office (RO) in New York, New York.

The Veteran appeared and testified at a personal hearing in June 2013 before the undersigned Acting Veterans Law Judge. A transcript of the hearing is contained in the record.

In October 2013, the Board found that the reduction of the Veteran's evaluation for service-connected spondylosis was proper, as well as remanded the claims for service connection for bilateral hearing loss and bilateral knee disorders. The Veteran appealed the decision as to the propriety of the rating reduction to the United States Court of Appeals for Veterans Claim (Court). In October 2014, the Court granted the parties Joint Motion for Remand (JMR), vacating the October 2013 decision as it pertained to the reduction in evaluation and remanded the matter for further development. 

The Virtual VA and Veterans Benefits Management System (VBMS) claims files have been reviewed. RO consideration of evidence submitted since the October 2014 Supplemental Statement of the Case has been properly waived..



FINDINGS OF FACT

1. The Veteran's service from October 31, 1982 to September 7, 1984 resulted in an other than honorable discharge. Entitlement to service connection based on that period of service is precluded as a matter of law.

2. In September 2010, the RO notified the Veteran of a proposal to reduce his disability rating for lumbar spondylosis from 40 percent to 10 percent disabling.

3. A March 2011 rating decision reduced the rating for the Veteran's lumbar spondylosis from 40 percent to 10 percent, effective June 1, 2011.

4. At the time of the reduction, the 40 percent rating for lumbar spondylosis had been in effect since June 17, 2006, a period less than five years.

5. At the time of the rating reduction, there was evidence of improvement in the Veteran's back disability, specifically increased flexion to 70 degrees, and the reduction was in accordance with all applicable laws and regulations.

6. The Veteran does not have bilateral hearing loss disability for VA disability compensation purposes.

7. A right knee disorder was not manifest during service or within one year of service. A right knee disorder is not attributable to service.

8. A left knee disorder was not manifest during service or within one year of service. A left knee disorder is not attributable to service.



CONCLUSIONS OF LAW

1. The Veteran's service from October 31, 1982 to September 7, 1984, ended with an other than honorable discharge due to civil conviction of a felony; that service was dishonorable for VA compensation purposes and resultantly a bar to VA benefits (exclusive of certain health care) based on that period of service. 38 U.S.C.A. §§ 101(2), 5303 (West 2014); 38 C.F.R. §§ 3.12, 3.13 (2014).

2. The reduction for the disability evaluation for lumbar spondylosis from 40 percent to 10 percent, effective June 1, 2011, was proper. 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. § 3.102 , 3.105, 4.1, 4.3, 4.7 (2014).

3. Bilateral hearing loss disability was not incurred in or aggravated by service, nor can an organic disease of the nervous system be presumed to have been incurred therein. 38 U.S.C.A. §§ 1101, 1112, 1113, 1131, 1137, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.307, 3.309 (2014).

4. A right knee disorder was not incurred in or aggravated by service, nor can degenerative joint disease of the right knee be presumed to have been incurred therein. 38 U.S.C.A. §§ 1101, 1131, 1137, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.307, 3.309 (2014).

5. A left knee disorder was not incurred in or aggravated by service, nor can degenerative joint disease of the left knee be presumed to have been incurred therein. 38 U.S.C.A. §§ 1101, 1131, 1137, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.307, 3.309 (2014).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Duties to Notify and Assist

The Veterans Claims Assistance Act of 2000 (VCAA) imposes obligations on VA to provide claimants with notice and assistance. 38 U.S.C.A. §§ 5102, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2014). The United States Court of Appeals for Veterans Claims (Court) issued a decision in the appeal of Dingess v. Nicholson, 19 Vet. App. 473 (2006), which held that the notice requirements of 38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b) apply to all five elements of a service connection claim, including the degree of disability and the effective date of an award. Those five elements include: (1) veteran status; (2) existence of a disability; (3) a connection between a veteran's service and the disability; (4) degree of disability; and (5) effective date of the disability.

In this case, the agency of original jurisdiction (AOJ) issued a notice letter, dated in April 2007, to the Veteran. This letter explained the evidence needed to substantiate the claims for service connection, as well the legal criteria for entitlement to such benefits. The letter also informed him of his and VA's respective duties for obtaining evidence. The AOJ decision that is the basis of this appeal was decided after the issuance of an initial, appropriate VCAA notice. As such, there was no defect with respect to timing of the VCAA notice. See Pelegrini v. Principi, 18 Vet. App. 112 (2004).

Where the reduction in evaluation of a service-connected disability is considered warranted and the lower evaluation would result in a reduction or discontinuance of compensation payments currently being made, a rating proposing the reduction or discontinuance will be prepared setting forth all material facts and reasons. The appellant will be notified at his or her latest address of record of the contemplated action and furnished detailed reasons therefore, and will be given 60 days for the presentation of additional evidence to show that compensation payments should be continued at their present level. The appellant is also to be informed that he/she may request a predetermination hearing, provided that the request is received by the VA within 30 days from the date of the notice. If additional evidence is not received within the 60 day period and no hearing is requested, final rating action will be taken and the award will be reduced or discontinued effective the last day of the month in which a 60-day period from the date of notice to the veteran expires. 38 C.F.R. § 3.105(e) (2014).

In this case, the Board finds that the RO provided the Veteran with appropriate notice of the proposed reduction of his lumbar spine evaluation in a September 2010 letter. Moreover, the Veteran subsequently sent written statements indicating that he did not think that the proposed reduction was warranted and his statements were considered by the RO. The proposed reduction was effectuated in a March 2011 rating decision, effective June 1, 2011. The Veteran did not request a predetermination hearing, but he indicated on his VA Form 9 substantive appeal to the Board that he wanted a Board hearing. The VA Form 9 was received in January 2013, well beyond the 60 days to request a hearing. The Veteran testified at a Board hearing regarding his reduction claim in July 2013. Therefore, the Board find that the RO's reduction of the evaluation of the Veteran's lumbar spine disability was procedurally in accordance with the provisions of 38 C.F.R. § 3.105.

VA also has a duty to assist a veteran with the development of facts pertinent to the appeal. 38 U.S.C.A. § 5103A (West 2014); 38 C.F.R. § 3.159(c) (2014). This duty includes the obtaining of "relevant" records in the custody of a Federal department or agency under 38 C.F.R. § 3.159(c)(2), as well as records not in Federal custody (e.g., private medical records) under 38 C.F.R. § 3.159(c)(1). VA will also provide a medical examination if such examination is determined to be "necessary" to decide the claim. 38 C.F.R. § 3.159(c)(4).

The claims file contains the Veteran's available service treatment records, reports of post-service treatment, and the Veteran's own statements in support of his claims. The Board acknowledges that the claims file does not contain the Veteran's full service treatment records. Records from his period of service from 1982 to 1984 are not available, and the RO attempted to secure such records through appropriate sources. The available service personnel records indicate that the records were last checked out to the Veteran. The Court has held that in cases where records once in the hands of the government are lost, the Board has a heightened obligation to explain its findings and conclusions and to consider carefully the benefit-of-the-doubt rule. See O'Hare v. Derwinski, 1 Vet. App. 365, 367 (1991).

The Veteran was afforded VA examinations responsive to the claims for service connection of bilateral hearing loss and right and left knee disorders. McClendon v. Nicholson, 20 Vet. App. 79 (2006). The opinions were conducted by a medical professional, following thorough examination of the Veteran, solicitation of history, and review of the claims file. The Board has reviewed the examination reports, and finds that they are adequate for the purpose of deciding the issues on appeal. 

The Board also observes that the undersigned AVLJ, at the Veteran's June 2013 hearing, clarified the issues on appeal and explained the concept of service connection claims, as well as explained the evaluation process. Potential evidentiary defects were identified and the file was left open to provide an opportunity to submit additional evidence. The actions of the AVLJ supplement VCAA and comply with 38 C.F.R. § 3.103. 

The Board has reviewed the Veteran's statements and medical evidence of record and concludes that there is no outstanding evidence with respect to the Veteran's claims. For these reasons, the Board finds that the VCAA duties to notify and assist have been met.

Reduction

Having determined above that the Veteran received proper notice of the proposal to reduce his lumbar spondylosis disability rating, the Board notes that the remaining question is whether the reduction was proper.

In certain rating reduction cases, VA benefits recipients are to be afforded greater protections, set forth in 38 C.F.R. § 3.344(a), (b). Those sections provide that rating agencies will handle cases affected by change of medical findings or diagnosis, so as to produce the greatest degree of stability of disability evaluations consistent with the laws and VA regulations governing disability compensation and pension. However, the provisions of 38 C.F.R. § 3.344(c) specify that those considerations are required for ratings which have continued for long periods at the same level (five years or more), and that they do not apply to disabilities which have not become stabilized and are likely to improve. Reexaminations disclosing improvement, physical or mental, in these disabilities will warrant a reduction in rating. 

Under 38 C.F.R. § 3.344(a), (b) the RO must find the following: (1) based on a review of the entire record, the examination forming the basis for the reduction is full and complete, and at least as full and complete as the examination upon which the rating was originally based; (2) the record clearly reflects a finding of material improvement; and (3) it is reasonably certain that the material improvement found will be maintained under the ordinary conditions of life. Kitchens v. Brown, 7 Vet. App. 320 (1995); Brown v. Brown , 5 Vet. App. 413 (1993). 

In this case, however, the Veteran's 40 percent rating for lumbar spondylosis was assigned from July 17, 2006 to June 1, 2011. See Brown v. Brown , 5 Vet. App. 413, 418 (1993) (noting that the duration of a rating must be measured from the effective date assigned that rating until the effective date of the actual reduction). Therefore, the requirements pertaining to reductions of ratings that have been in effect for at least five years are not applicable. 38 C.F.R. § 3.344(a),(b).

Pursuant to 38 C.F.R. § 3.344(c), an examination disclosing improvement will warrant reduction in the rating. 38 C.F.R. § 3.344(c). The question is thus whether an examination had shown an improvement warranting reduction in the rating.

In general, when there is an approximate balance of evidence regarding the merits of an issue material to the determination of the matter, the benefit of the doubt in resolving each such issue shall be given to the claimant. See 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102. However, the Court has specified a different burden of proof with respect to ratings reductions claims. Because the issue in this case is whether the RO was justified in reducing the Veteran's 40 percent rating, rather than whether the Veteran was entitled to "reinstatement" of the 40 percent rating, the Board is required to establish, by a preponderance of evidence and in compliance with 38 C.F.R. § 3.344(a), that a rating reduction was warranted. See Brown, 5 Vet. App. at 420; see also Kitchens v. Brown, 7 Vet. App. 320, 325 (1995).

Disability ratings are determined by the application of a schedule of ratings which is based on average impairment of earning capacity. 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1. Separate diagnostic codes identify the various disabilities. Where there is a reasonable doubt as to the degree of disability, such doubt shall be resolved in favor of the claimant, and where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating. 38 C.F.R. §§ 3.102, 4.3, 4.7. In addition, the Board will consider the potential application of the various other provisions of 38 C.F.R., Parts 3 and 4, whether or not they were raised by the veteran, as well as the entire history of the veteran's disorder in reaching its decision, as required by Schafrath v. Derwinski, 1 Vet. App. 589 (1991).

Weakness is as important as limitation of motion, and a part which becomes painful on use must be regarded as disabled. See DeLuca v. Brown, 8 Vet. App. 202 (1995); 38 C.F.R. § 4.40; see also 38 C.F.R. §§ 4.45, 4.59. When evaluating a loss of motion consideration is given to the degree of functional loss caused by pain. DeLuca v. Brown, 8 Vet. App. 202 (1995). Significantly, however, under the general rating for spinal disorders the rating criteria are controlling whether there are or are not symptoms of pain (to include whether or not it radiates), stiffness, or aching in the area of the spine affected by residuals of injury or disease. 38 C.F.R. § 4.71a.

The Veteran's lumbar spondylosis is evaluated under 38 C.F.R. § 4.71a, Diagnostic Code 5239. The General Rating Formula for Diseases and Injuries of the Spine, provides a 10 percent evaluation is warranted when forward flexion of the thoracolumbar spine is greater than 60 degrees but not greater than 85 degrees, or the combined range of motion of the thoracolumbar spine greater than 120 degrees but not greater than 235 degrees, or muscle spasm, guarding, or localized tenderness not resulting in abnormal gait or abnormal spinal contour, or vertebral body fracture with loss of 50 percent or more of the height. 

A 20 percent evaluation is warranted for forward flexion of the thoracolumbar spine greater than 30 degrees but not greater than 60 degrees; a combined range of motion of the thoracolumbar spine not greater than 120 degrees; or muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis, or abnormal kyphosis. 

A 40 percent evaluation is in order for forward flexion of the thoracolumbar spine of 30 degrees or less, or favorable ankylosis of the entire thoracolumbar spine.

Note (1): VA will evaluate any associated objective neurologic abnormalities, including, but not limited to, bowel or bladder impairment, separately, under an appropriate diagnostic code. 

Note (2): (See also Plate V.) For VA compensation purposes, normal forward flexion of the thoracolumbar spine is zero to 90 degrees, extension is zero to 30 degrees, left and right lateral flexion are zero to 30 degrees, and left and right lateral rotation are zero to 30 degrees. The normal combined range of motion of the thoracolumbar spine is 240 degrees. The normal ranges of motion for each component of spinal motion provided in this note are the maximum that can be used for calculation of the combined range of motion.

Spine conditions rated under DC 5243, for intervertebral disc syndrome, may be rated alternatively based on incapacitating episodes.

In June 2007, the Veteran was afforded a VA spine examination. He reported that his pain was a 7 out of 10 intensity, and that he experienced a progressive worsening of symptoms. He reported flare-ups of pain at a 9 out of 10 intensity two to three times a week, lasting three to four hours. He reported using a cane for walking, and stated he could walk "a couple of blocks and for five minutes without stopping." The Veteran had a straight spine with slightly stooped posture, and a antalgic gait, but was stable on Tandem. There was no asymmetry in appearance of the spine. The Veteran's forward flexion was to 30 degrees and extension to 10 degrees. His pain began at 30 degrees of flexion and 5 degrees of extension. After three repetitive range of motion testings, the Veteran reported increased pain from a level 6 to 8 out of 10, and he had additional loss of motion of five degrees on flexion and extension. He reported weakness, fatigue, and lack of endurance. The examiner noted that there was no muscle spasm or tenderness of the lumbar spine or paraspinalis, and his muscle strength was 5/5 throughout. 

Based on the range of motion findings of the June 2007 VA examination, the Veteran was assigned an initial 40 percent evaluation, effective July 17, 2006, in a February 2008 rating decision.

In July 2007, the Veteran received VA treatment for twisting his foot while jumping rope. 

During in-patient psychiatric care in May 2009, the Veteran was asked about his leisure activities, and he reported that he "jogs, walks, reads, swims and goes fishing."

In October 2009, the Veteran, who was receiving in-patient psychiatric care, reportedly was "limping, complaining of abdominal pain and demanding to have his gallbladder removed." When he was questioned about his prior medical history, he became angry with staff and "started pacing back and forth in the hallway. Interestingly, his gait was normal this time." Notably, within the same record the Veteran was able to provide a medical history with a precise timeline even though he previously indicated he did not know the town, county or floor of the VA hospital. He also reported the only thing preventing him from committing suicide was that he needed to care for his wife; however, his wife resided several states away at the time.

In March 2010, the Veteran reported to his treating providers at VA that he had no musculoskeletal complaints or difficulty with range of motion.

In July 2010, the Veteran was afforded an additional VA examination. He reported weekly severe flare ups of lumbar spine pain. He denied incontinence and incapacitating episodes. His active range of motion was to 70 degrees of flexion and 15 degrees of extension. He also has lateral flexion and rotation to 20 degrees, right and left. There was objective evidence of pain with range of motion testing; however, there was no additional loss of motion with repetitive testing. An x-ray taken in conjunction with the examination revealed a mild worsening of the degenerative process. 

Based on the results of this July 2010 VA examination, the RO initiated the proposed reduction. 

In January 2012, VA treatment records showed pain with lumbar extension, and limited flexion. He had "no radicular symptoms."

In February 2012, the Veteran complained of chronic low back pain with radicular symptoms. He was unable to participate in flexion and extension testing secondary to pain, and he was "severely limited" in side to side lateral flexion. He was noted to have "chronic low back pain with radiation symptoms secondary to degenerative joint disease, and large desiccated herniated disc at the L4-5 level compressing the thecal sac as evidenced by both MRIs."

In June 2012, the Veteran was again afforded a VA examination. He reported constipation and urinary retention since November 2011. The Veteran refused to perform range of motion testing secondary to complaints of severe back pain. However, he was seen by the VA examiner "flexing forward to pick up his bag on the floor." He had tenderness to the L4-5 level of his spine. He did not have guarding or muscle spasm of the thoracolumbar spine. He had negative straight leg raising tests bilaterally. He reported symptoms of radiculopathy, of mild and moderate pain of the lower extremities. He did not need an assistive device for ambulation.

Private treatment records from November 2012 noted a new onset of bowel and bladder dysfunction. "Seepage" once or twice in the past was noted. In a February 2013 note, the Veteran complained of on and off incontinence for the past six or seven months. 

During his July 2013 hearing, the Veteran insisted that his lumbar spondylosis had not improved at the time of the July 2010 VA examination, and that the x-ray showed that his spinal condition had in fact worsened since 2006. He argued that he did not perform range of motion testing during his examinations, and so there could not be evidence of improved range of motion testing. He testified that both examiners saw how much pain he was in and said that they "couldn't do that" to him (put him through the pain of range of motion testing). He argued that he had continued worsening symptoms as well. 

As noted above, the Veteran's treatment records include a history of malingering and an apparent willingness to fake or exaggerate symptoms. At the time of the July 2010 VA examination, his forward flexion was to 70 degrees and he had a combined thoracolumbar range of motion of 165 degrees. In June 2012, the Veteran refused to participate in range of motion testing, although the examiner witnessed the Veteran bending to pick up a bag from the floor. He did not provide range of motion results to VA care providers either. While he contended during his 2013 hearing that he did not provide range of motion testing at all, and so therefore there could not be a notation of improvement, the record clearly shows he participated in range of motion testing in 2007 and 2010; significantly, he denied problems with range of motion in 2010. 

Having reviewed the record, the Board agrees with the RO's decision to reduce the disability rating assigned for the Veteran's back disability. The objective evidence of record indicates a material improvement in the Veteran's disability. Specifically, the evidence shows an improvement in flexion from 25 degrees on repetitive testing to 70 degrees on repetitive testing between 2007 and 2010. Additionally, treatment records between 2007 and 2010 indicated that the Veteran was able to walk with a normal gait, had hobbies which included jogging, and was able to jump rope. Thus, the basis for the 40 percent rating under Diagnostic Code 5239, i.e. forward flexion of the lumbar spine to 30 degrees or less or favorable ankylosis of the entire thoracolumbar spine, were not shown to be present at the time of the June 2010 VA examination. 

The Board has considered whether the Veteran's back symptoms otherwise met the criteria for a 40 percent rating. As outlined above, the Veteran's observed range of motion at the time of the June 2010 VA examination would not warrant a 40 percent rating. In addition, the Veteran has not been diagnosed with intervertebral disc syndrome and the record does not reveal physician-prescribed bedrest; therefore, an alternative evaluation under Diagnostic Code 5243 is not warranted. 

The Board has considered the Veteran's functional loss, as the medical evidence shows that the Veteran has consistently complained of pain in the back. 38 C.F.R. §§ 4.40, 4.45; see also DeLuca v. Brown, 8 Vet. App. 202 (1995). In this case, however, the reduced 10 percent rating fully contemplates and compensates the Veteran for his functional loss. Even accounting for the Veteran's painful thoracolumbar motion, the point of pain or tenderness onset at 70 degrees of forward flexion and 165 degrees of combined range of motion would not warrant a 20 percent rating. On examination, the Veteran's motion has been limited only by pain, which is fully contemplated in his reduced rating. There is otherwise no evidence of significant impairment of motor skills, muscle function, or strength attributable to the Veteran's back disability.

In summary, the Board finds that the reduction from 40 percent to 10 percent for lumbar spondylosis was proper. 

Finally, the Board observes that, in general, the RO's reduction of a rating must have been supported by the evidence on file at the time of the reduction. Pertinent post-reduction evidence favorable to restoring the rating, however, also must be considered. Dofflemeyer v. Derwinski, 2 Vet. App. 277 (1992). Here, the Board has considered the post-reduction evidence as well. Diagnostic tests (MRIs) have indicated a mild worsening of the Veteran degenerative changes. Additionally, the Veteran has argued he has developed incontinence as a result of his lumbar spine disorder. However, private treatment records from November 2012 noted good rectal tone, and the Veteran conversely stated in November 2012 that his symptoms were of a new onset, while in February 2013 he noted that they began six or seven months prior. A VA February 2012 orthopedic note indicated his urological issues were not caused by his lumbar spine. Additionally, psychiatric treatment records include treatment for bowel incontinence secondary to withdrawal from narcotics. The record does not show that the Veteran had frequent periods of hospitalization for his lumbar spine disability. The record also reflects that the Veteran has been unemployed since the 1980s (although he has provided contradictory information regarding his employment and employment history, at one time indicating he makes $8,000 a month as a motivational speaker).

Moreover, due to the Veteran's refusal to participate in range of motion testing in 2012, even though the examiner observed the Veteran's ability to bend over, and due to medical records which include numerous accounts of malingering (those accounted for here regarding his lumbar spine symptoms, and additional notations of his manipulative behavior and statements during psychiatric treatment), the Board does not find his subjective complaints, to include additional functional limitation, to be credible. Indeed, during his 2013 hearing the Veteran argued that if he did not participate in range of motion testing, then the VA could not reduce his rating as there was no proof of improvement. Arguably, the Veteran's lumbar spine disability may be worse than a 10 percent rating, however, his inability to cooperate with VA examinations and treatment care providers limits the available credible evidence before the Board. 

To the extent that the Veteran's representative and the aforementioned October 2014 JMR suggest that the Board did not adequately discuss whether an improvement in the Veteran's symptoms equated an improvement in the Veteran's ability to function in everyday life, the Board points out that the Veteran's lumbar spondylosis, standing alone, does not inhibit the Veteran from being able to live independently and maintain good hygiene. In this regard, the Veteran points out that the Veteran's incontinence is unrelated to his lumbar spondylosis and that the Veteran has consistently denied that his lumbar spondylosis requires bed rest and/or hospitalization. In this regard, the Board acknowledges that the Veteran reported that he lost 3 weeks of work in the prior 12 month period due to his lumbar spondylosis symptomatology, but points out that there is nothing in the evidence of record confirming employment, let alone medically excused absences from employment due to his lumbar spondylosis. Instead, the Board observes that the Veteran has been hospitalized for substance abuse and psychiatric symptomatology. These records also reflect that he denied any musculoskeletal complaints. (See VA treatment notes, March 2010).

Additionally, the Board notes that although the JMR indicates that the Board failed to address 38 C.F.R. §§ 4.1, 4.2, 4.10, and 4.13 as per Brown, supra, the Board observes that the application of these provisions is misplaced. The reduction of the evaluation for lumbar spondylosis works to properly represent the average impairment in the Veteran's earning capacity due to his service-connected lumbar spondylosis; as previously discussed, the Veteran's unemployment is unrelated to his lumbar spine. Likewise, in viewing the Veteran's lumbar spondylosis throughout the medical history of record indicates that the Veteran's June 2007 VA examination was an outlier in comparison to the other medical evidence. Thus, 38 C.F.R. § 4.1 does not assist the Veteran. Moreover, the Board observes that there is no dispute as to the nature and severity of the Veteran's lumbar spondylosis; the June 2010 VA examination report and the Veteran's treatment records more accurately appreciates the improvement in the Veteran's lumbar spondylosis such that a 40 percent evaluation was no longer warranted. Therefore, 38 C.F.R. § 4.2 is inapplicable. Similarly, consideration of 38 C.F.R. § 4.10 does not change the result, as the June 2010 VA examination provided a full and adequate description of the minimal functional impact of the Veteran's lumbar spondylosis; the Veteran's functional impairment has improved. And, the Board points out that 38 C.F.R. § 4.13 is not for consideration where there has been no change in diagnosis. 

In summary, the Board finds that the RO complied with the procedural requirements for reducing the Veteran's rating for his back disability and concludes that the reduction from a 40 percent rating to a 10 percent rating effective from June 1, 2011, was warranted. For the reasons stated, the Board finds that the rating reduction at issue was proper. Accordingly, the benefit of the doubt doctrine is not for application.

Service Connection

Service connection may be granted for disability resulting from disease or injury incurred in or aggravated by active service. 38 U.S.C.A. §§ 1110, 1131 (West 2014); 38 C.F.R. § 3.303(a) (2014). To establish a right to compensation for a present disability, a Veteran must show: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service-the so-called "nexus" requirement. Holton v. Shinseki, 557 F.3d 1362, 1366 (Fed. Cir. 2009) (quoting Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004)). 

Service connection may be granted for any disease initially diagnosed after service when all of the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d).

For the showing of chronic disease in service, there is required a combination of manifestations sufficient to identify the disease entity, and sufficient observation to establish chronicity at the time. As bilateral hearing loss and degenerative joint disease (arthritis) are chronic diseases for VA compensation purposes, if chronicity in service is not established, a showing of continuity of symptoms after discharge is required to support the claim. 38 C.F.R. §§ 3.303(b), 3.309; Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013).

Bilateral Hearing Loss 

The threshold for normal hearing is from 0 to 20 decibels. Hensley v. Brown, 5 Vet. App. 155, 157 (1993). For the purposes of applying the laws administered by VA, impaired hearing will be considered to be a disability when the auditory threshold in any of the frequencies 500, 1000, 2000, 3000, 4000 Hertz is 40 decibels or greater; or when the auditory thresholds for at least three of the frequencies 500, 1000, 2000, 3000, or 4000 Hertz are 26 decibels or greater; or when speech recognition scores using the Maryland CNC Test are less than 94 percent. 38 C.F.R. § 3.385.

The Veteran does not assert that he was in combat, nor are service personnel records reflective of such. Therefore, the provisions of 38 U.S.C.A. § 1154(b) are not applicable. Nonetheless, the Board finds that he had in-service noise exposure. See 38 U.S.C.A. § 1154(a); 38 C.F.R. § 3.303(a). 

Despite the Veteran's complaints of bilateral hearing loss, the post-service medical evidence reflects that the Veteran does not have hearing loss disability of either ear for VA disability benefits purposes at any time. He had a Maryland CNC speech recognition score of 96 percent in the left and right ears at the August 2014 VA examination. Similarly, his military and VA audiological evaluations show that the Veteran does not have sufficient hearing loss in either ear to meet the threshold minimum requirements of 38 C.F.R. § 3.385 to be considered a disability by VA. See Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992). 

The Board acknowledges the Veteran's noise exposure during service and his assertions that this noise exposure caused his bilateral hearing loss. Nonetheless, the Board notes that, despite the Veteran's complaints, the Veteran did not have auditory thresholds of 26 decibels or greater in at least three frequencies for either ear, or auditory threshold in excess of 40 decibels in either ear at any time; he also did not have Maryland CNC speech recognition scores below 94 percent. Clearly the Veteran is competent to report a decrease in hearing acuity. However, the results of the audiometric examination are controlling. 

For the foregoing reasons, the preponderance of the evidence is against the claim of service connection for bilateral hearing loss disability. The benefit-of-the-doubt doctrine is therefore not for application, and the claim must be denied. See 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102; see also Fagan v. Shinseki, 573 F.3d 1282, 1287 (Fed. Cir. 2009).

Knee Disorders 

During his July 2013 Board hearing, the Veteran testified that the knee problems he incurred in service had continued to the present. He stated that he was not given an adequate VA joints examination, as the examiner "never touched" him and he was not asked to "move [his] knees." He also reported that VA orthopedists have told him that his knee problems were due to his in-service injuries.

A review of the treatment records from the Veteran's periods of honorable service reveal treatment for complaints of bilateral knee pain. In February 1976, the Veteran complained of painful right knee cap, and he was assessed with strained ligaments. In March 1976, he was diagnosed with tendonitis of both knees. In May 1976 his knees were evaluated and he had full range of motion and no instability. He was noted to not have an orthopedic disease and was discharged to duty. In April 1977, he complained of chronic right knee pain after falling from a 16 foot bank. He was noted to have a "possible pulled ligament." In December 1977, he complained of bilateral knee pain, with unknown trauma. He was noted to have mild crepitus. In April 1978, he was diagnosed with chondromalacia by history. In June 1978, he complained of constant knee pain on use and at rest and swelling. He had mild effusion of the left knee. In March 1979, he complained of a several month history of left knee pain, although he had a negative x-ray. He had a normal clinical evaluation of the lower extremities in October 1980.

The Veteran was afforded a VA joints examination in November 2007. The examiner noted that the Veteran did not have degenerative joint disease according to x-rays, but that he had "probable meniscal tears" which "may be age-related and not acute tears." The examiner indicated that he provided a negative nexus stated due to the lack of documentation of recurrent effusion from 1977 to the present. 

The Veteran was afforded a VA orthopedic examination in November 2013. According to the report, the Veteran had been diagnosed with very slight degenerative changes of the right and left knees. Following a review of the claims file and physical examination of the Veteran, the VA examiner opined that it was not likely that the Veteran's degenerative changes of the knees were incurred in or caused by the claimed in-service injury, event, or illness. The VA examiner acknowledged that the Veteran was treated on multiple occasions for knee pain from 1976 to 1979, including after a fall (right knee) and while playing basketball (left knee), but pointed out that the contemporaneous physical examinations were normal and that x-rays of the knees in 2007 were normal. The VA examiner also pointed out that the lack of continuity of knee issues in the years since service and stated that this was indicative of a lack of connection between the in-service injuries and his present degenerative changes of the right and left knees; the VA examiner opined that the Veteran's right and left knee disorders were more likely than not related to aging.

Based on the evidence of record, the Veteran's claims of service connection for right and left knee disorders must be denied.

Here, no degenerative joint disease of the either knee was "noted" or identified during service or within one year of separation. Additionally, there is nothing to suggest that there were characteristic manifestations sufficient to identify the degenerative joint disease of the right and left knees during service. 38 C.F.R. § 3.303(b).

The Veteran is competent to report symptoms and diagnoses of degenerative joint disease of the right and left knees, and when his symptoms were first identified. See Kahana v. Shinseki, 24 Vet. App. 428, 433 (2011) (noting impropriety of the Board categorically discounting lay testimony and requiring the Board to determine, on a case by case basis, whether a veteran's particular disability is the type of disability for which lay evidence is competent). However, none of the post-service treatment records reflect complaints, treatment, or diagnoses of degenerative joint disease within one year of service. Moreover, his statements, even if accepted as credible, do not establish a nexus to his service for bilateral knee disorders. See Boyer v. West, 210 F.3d 1351, 1353 (Fed. Cir. 2000) (a Veteran seeking disability benefits must establish the existence of a disability and a connection between such Veteran's service and the disability). 

The weight of the evidence reflects that the Veteran's right and left knee disorders are unrelated to his service. The November 2013 VA examination report clearly concluded that the right and left knee disorders were less likely than not related to the Veteran's service. See Madden v. Gober, 125 F.3d 1477, 1481 (1997) (in evaluating the evidence and rendering a decision on the merits, the Board is required to assess the credibility and probative value of proffered evidence in the context of the record as a whole). 

There is no probative evidence that the Veteran's left and right knee disorders are related to his acute complaints of knee pain during service. To the contrary, the November 2013 VA examination report demonstrates that it is unlikely that the Veteran's right and left knee disorders are related to his service, and opined that the absence of related complaints in the years since service indicates that there is no relationship between his current complaints and his service. Of note, the Veteran's VA treatment records indicate that the Veteran made no complaints related to his knees until after he filed his claims for service connection. See Pond v. West, 12 Vet. App. 341 (1999). As such, the Board finds that the Veteran's report of on-going problems to be inconsistent with the record and not credible.

In rendering a decision on appeal, the Board must analyze the credibility and probative value of the evidence, account for the evidence which it finds to be persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the claimant. See Gabrielson v. Brown, 7 Vet. App. 36, 39-40 (1994). 

To the extent that there are lay opinions, including those of the Veteran, linking the Veteran's right and left knee disorders to an in-service event, injury, or illness, the Board finds that the probative value of the general lay assertions are outweighed by the specific, reasoned opinion of the November 2013 VA examination report and the clinical evidence of record. The VA examiner's opinion, determining that the Veteran's right and left knee disorders are unrelated to service, is entitled to greater probative weight than the more general lay assertions of the Veteran, even assuming those lay assertions were competent. See Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007). 

In this regard, the Board points out that the VA examiner's opinion was specific, and well-reasoned. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 304 (2008) (most of the probative value of a medical opinion comes from its reasoning; threshold considerations are whether the person opining is suitably qualified and sufficiently informed). The VA examiner found that the Veteran's current degenerative joint disease of the right and left knees did not have onset during service and were unrelated to any event, illness, or injury in service. The VA examiner explained the reasons for the conclusions based on an accurate characterization of the evidence of record, which does not demonstrate that the Veteran's degenerative joint disease of the right and left knees is related to service. See Prejean v. West, 13 Vet. App. 444, 448-49 (2000) (stating that factors for assessing the probative value of a medical opinion are the physician's access to the claims folder and the thoroughness and detail of the opinion). 

For the foregoing reasons, the preponderance of the evidence is against the claims for service connection of right and left knee disorders. The benefit-of-the-doubt doctrine is therefore not for application, and the claims must be denied. See 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102; see also Fagan v. Shinseki, 573 F.3d 1282, 1287 (Fed. Cir. 2009).


ORDER

The reduction from 40 percent to 10 percent for service-connected lumbar spondylosis, effective from June 1, 2011, was proper.

Service connection for bilateral hearing loss disability is denied.

Service connection for a right knee disorder is denied.

Service connection for a left knee disorder is denied.




____________________________________________
LANA K. JENG
Acting Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs